**Robert PILCHMAN, Plaintiff,**

v.

**DEPARTMENT OF DEFENSE, Defendant.**

**Nos. 97 CV 3010(NG)(CLP), 98 CV 4902(NG)(CLP), 98 CV 5476(NG)(CLP).**

United States District Court, E.D. New York.

July 25, 2001.

Robert Pilchman, plaintiff pro se.

Vincent Lipari, Assistant U.S. Attorney, New York, for defendant.

### MEMORANDUM AND ORDER

GERSHON, District Judge.

Robert Pilchman, plaintiff *pro se*, brings these actions against defendant Department of Defense alleging that he suffered discrimination in being rejected for enlistment in the Navy's nuclear propulsion officer candidate program ("NUCPOC"), a program for active duty in the Naval Reserve, primarily because he is an Orthodox Jew.[1] In a previous Memorandum and Or-

---

1. The complaints, which are substantially identical in substance, also state that the federal government discriminated against plaintiff "because of my religious background, sexual orientation, age, gender or any disability (in which the disability is not a justifiable reason to discriminate against me)." The complaints do not identify the basis for a

der relating to defendant's motion to dismiss the first complaint (97 CV 3010) in these actions pursuant to Rules 12(b)(1) and 12(b)(6) for failure to state a claim and for lack of subject matter jurisdiction, I construed the complaint liberally and identified the legal bases for the claims as: (1) a constitutional tort claim for damages under the Federal Tort Claims Act ("FTCA"); (2) a claim for employment discrimination on the basis of religion under Title VII; (3) a *Bivens* claim for damages for violations of his constitutional rights; and (4) a claim for injunctive relief based on the unconstitutional actions of federal officials. This court dismissed the FTCA claim for failure to exhaust administrative remedies, dismissed the Title VII claim because the statute does not apply to applicants for uniformed positions in the military, and dismissed the *Bivens* claim because such a claim for alleged deprivation of constitutional rights cannot be brought against a federal agency. Since defendant's motion to dismiss had not specifically addressed plaintiff's request for injunctive relief, defendant was afforded the opportunity to move against that claim if it wished to do so. *Pilchman v. Department of Defense*, 1998 WL 564386 (E.D.N.Y., July 17, 1998).

Plaintiff subsequently filed the second and third complaints (98 CV 4902 and 98 CV 5476). The second and third complaints are identical, and the factual allegations substantially repeat those in the first complaint except for references to several communications that occurred after the first complaint was filed, which mainly relate to plaintiff's exhaustion of administrative remedies within the Department of Defense and the armed services. The second and third complaints assert the same claims that are identified in the court's prior opinion: a tort claim under the FTCA, employment discrimination under Title VII, a *Bivens* claim for violation of plaintiff's constitutional rights, and a claim for injunctive relief based on the unconstitutional actions of federal officials, as well as the following: "In addition (and/or including) the Americans with Disabilities Act, Freedom of Information Act (and/or Privacy Act), defamation law, violation of rights as a medical subject, and discrimination law." Plaintiff identifies no basis for his Freedom of Information Act, Privacy Act or defamation claims or his claim that his rights as a medical subject were violated. Plaintiff requests the following relief: (1) $20 million damages; (2) invalidation of the results of his previous physical examination, expungement of the records, and administration of a new physical examination by different personnel unaffected by the results of the prior examination; (3) affording plaintiff a "fair and normal application process" to join the armed services administered by a "fair and normal recruiter"; (4) ordering plaintiff's acceptance into NUCPOC; (5) affording plaintiff "fair and normal treatment" after his acceptance into the armed services and providing plaintiff "access at all times, to high ranking members of the military, including the Secretary of Defense" to ensure fair treatment and the absence of retaliation.

---

claim of gender discrimination. Nor do they identify plaintiff's sexual orientation or state a basis for claiming that plaintiff was discriminated against because of it or someone's perception of his sexual orientation. Plaintiff refers to a violation of the "don't ask, don't tell" policy, but in a context that appears to relate to requests by military officials for records of plaintiff's past counseling for an unspecified mental or psychological condition that plaintiff had disclosed on his application. If plaintiff is alluding to the military's policy concerning homosexuals, that policy was upheld as lawful by the Second Circuit. *Able v. United States*, 155 F.3d 628 (2d Cir.1998).

In light of plaintiff's filing of two additional complaints after my prior decision, defendant's challenge to plaintiff's request for injunctive relief in the first complaint was deferred for consideration together with motions directed to the second and third complaints. Defendant filed answers to each complaint and now moves to dismiss the complaints pursuant to Rule 12(b)(6), which will also be treated as a motion for judgment on the pleadings pursuant to Rule 12(c) since defendant has answered. On a motion for judgment on the pleadings, as on a motion to dismiss, the allegations of the complaint must be taken as true, with all inferences drawn in favor of the plaintiff, and the complaint can be dismissed only if "it 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Sheppard v. Beerman,* 94 F.3d 823, 827 (2d Cir.1996) (citation to earlier decision in same case omitted).

As noted earlier, the allegations of the second and third complaints mirror those of the first complaint, which are described in detail in my prior opinion and need not be repeated here. The complaints quote from a March 20, 1997 letter to plaintiff from Colonel G.R. Sachtleben, Inspector General of the Department of Defense Military Entrance Processing Command, stating that plaintiff's medical processing is incomplete and that further documentation was required concerning plaintiff's counseling in 1985, surgery for a cyst, and treatment for dehydration. Defendant's motion to dismiss attaches the March 20

letter,[2] which states that it is Col. Sachtleben's "final response to your letters regarding the circumstances involved in applying for a commission in the U.S. Navy," and proceeds to address in detail the claims and concerns plaintiff had previously raised and the reasons for Sachtleben's conclusions that plaintiff had been treated properly and that a new physical examination was not warranted. The letter states that plaintiff's application had been rejected because he did not meet the criteria for NUCPOC based on a lack of calculus-based physics, and that plaintiff had not availed himself of the alternative of qualifying by taking an aptitude examination. Plaintiff was medically disqualified for two reasons set forth in the regulations, according to Sachtleben's letter, *i.e.,* psoriasis and excessive refractive error in vision. The letter advises that a waiver of disqualification for these medical conditions would not be considered until medical processing is complete, whereas plaintiff still had to supply records pertaining to the counselling, the cyst and dehydration. Sachtleben explains that he had considered and rejected plaintiff's claims of irregularity' in his physical examination.

Plaintiff alleges that in April, 1998 he was advised by Lieutenant Dennis Espirita, a Navy recruiting officer, that the age limit for eligibility for NUCPOC had been raised to 29. The age limit had previously been 26½; since plaintiff was born on June 6, 1970, he satisfied this requirement when he first applied for the program in August 1996. Although Col. Sachtleben did not include age as a basis for plaintiff's dis-

---

2. The court may properly consider the full text of the letter because the complaints quote from it, and the letter's explanation of the reasons for plaintiff's rejection is integral to the claims. *See Stuto v. Fleishman,* 164 F.3d 820, 826 n. 1 (2d Cir.1999) (document sent to plaintiff with order rejecting his administrative claim properly considered in dismissing complaint's challenge to adequacy of administrative procedures); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc.,* 75 F.3d 801, 808–09 (2d Cir. 1996) (district court could consider full text of documents relied on and selectively quoted in complaint in granting motion to dismiss).

qualification, the complaints allege that other military officials had told plaintiff that he was *too old* to be considered when his application was resubmitted in early 1997. Lt. Espirita also told plaintiff in April 1998 that he was permanently disqualified due to his eyesight and a pulmonary condition; the latter had never before been mentioned, which reinforced plaintiff's belief that the physical disqualification was pretextual, although plaintiff admits that "[a]pparently during the time of my physical I was not completely over my case of pneumonia or severe bronchitis."

### Discussion

1. *Title VII, Bivens, and Other Statutory and Common Law Claims.*

■ Plaintiff's claims under Title VII and *Bivens* are dismissed for the reasons stated in this court's prior opinion, which is the law of the case. Plaintiff does not give any basis for revisiting these issues, and there has been no intervening change in the law that would require the court to do so. Nor can plaintiff assert claims under the Americans with Disabilities Act (ADA) or other federal or state statutes against discrimination, or under the common law. As with Title VII, these remedies do not apply to uniformed positions of the military or to civilian applicants for those positions. *Baldwin v. United States Army*, 223 F.3d 100 (2d Cir.2000) (uniformed members of armed services barred from asserting claims under Title VII, ADA or Age Discrimination in Employment Act (ADEA)); *Coffman v. State of Michigan*, 120 F.3d 57 (6th Cir.1997), cited with approval in *Baldwin* (ADA, Rehabilitation Act, and state law against disability discrimination did not apply to National Guard member challenging his release); *Smith v. Christian*, 763 F.2d 1322 (11th Cir.1985) (Rehabilitation Act did not apply to applicant for position in Naval Reserve); *cf. Roper v. Department of Army*, 832 F.2d 247, 248 (2d Cir.1987) ("we refuse to extend a judicial remedy for alleged discrimination in civilian employment to the dissimilar employment context of the military").

2. *Damages for Constitutional Violations Under FTCA.*

■ Plaintiff's claim for $ 20 million damages in tort under the FTCA for violation of his constitutional rights is not precluded by the prior opinion, which dismissed the claim for damages in the first complaint because plaintiff had failed to exhaust administrative remedies before bringing it. The government concedes that plaintiff presented his claim to the Department of Defense and exhausted his administrative remedies before filing the second and third complaints. This claim is dismissed for lack of subject-matter jurisdiction. Although defendant has not moved to dismiss for lack of jurisdiction, the court is obligated to notice that defect, since it divests the court of authority to adjudicate the merits. 28 U.S.C. § 1346(b)(1) confers jurisdiction upon the district courts of civil actions on claims against the United States for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." A constitutional tort claim is not cognizable under Section 1346(b). *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 477–78, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (claim by discharged employee that he had been deprived of due process may not be brought under FTCA). In *Meyer*, the Supreme Court interpreted the statute as limiting

jurisdiction to claims against the United States in circumstances where a private person would be liable to the plaintiff under state law, which necessarily excluded constitutional claims: "By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right." *Id.* at 478, 114 S.Ct. 996. Plaintiff's claims that he was subjected to discrimination and unfair treatment in violation of his rights under the First Amendment, equal protection and due process likewise raise issues under federal law that are not cognizable under Section 1346(b).[3] In any event, for the reasons stated below in dismissing plaintiff's claim for injunctive relief, the complaints do not state a claim of violation of plaintiff's constitutional rights.

### 3. *Injunctive Relief.*

 Plaintiff has no right to a position in the uniformed services. *MacFarlane v. Grasso,* 696 F.2d 217, 221–22 (2d Cir.1982). However, insofar as the complaints seek injunctive relief for alleged violation of plaintiff's constitutional rights, the court may entertain those claims and award appropriate relief if they are found to be meritorious. *Id.* at 221 (judicial review available of claims by applicant for Army National Guard position that his rejection violated due process, equal protection and the First Amendment); *Crawford,*

531 F.2d at 1120–21 (reviewing due process and equal protection claims seeking declaratory relief in the nature of mandamus concerning regulation mandating discharge for pregnancy); *see United States v. Stanley,* 483 U.S. 669, 683, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987) (distinguishing availability of judicial "redress designed to halt or prevent the constitutional violation" from the general unavailability of money damages for injuries incident to military service). Even in the military context, the courts cannot abdicate their ultimate responsibility to decide constitutional questions. *Rostker v. Goldberg,* 453 U.S. 57, 67–70, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981); *see Crawford,* 531 F.2d at 1120 ("a succession of cases in this circuit and others had reiterated the proposition that the military is subject to the Bill of Rights and its constitutional implications"); *cf. United States v. Robel,* 389 U.S. 258, 263–67, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967) (blanket prohibition on employment in any defense facility of member of Communist-action organization violates First Amendment freedom of association).

 As the government argues, decisions concerning military personnel by the legislative and executive branches are entitled to great deference. *See, e.g., Goldman v. Weinberger,* 475 U.S. 503, 507–09, 106 S.Ct. 1310, 89 L.Ed.2d 478

**3.** Although a military-related claim may be available under the Tucker Act, 28 U.S.C. §§ 1346(a)(2) and 1491(a)(1), the jurisdictional limit in the district court is $10,000˙ and here plaintiff seeks $20 million in damages. Therefore, this court has no jurisdiction of plaintiff's claim for damages under the Tucker Act. *See Maier v. Orr,* 754 F.2d 973, 980–82 (Fed.Cir.1985) (claim by servicewoman seeking damages for improper discharge from Air Force on basis of medical disability is an action for monetary relief under § 1346(a)(2) and within district court's jurisdiction because plaintiff specifically waived all damages in excess of $10,000); *Crawford v. Cushman,*

531 F.2d 1114, 1126 n. 17 (2d Cir.1976) (claim for damages for discharge from Marine Corps based on pregnancy pursuant to unconstitutional regulation could not exceed $10,000 in action brought in district court); *Janniere v. United States Army,* 34 F.Supp.2d 850, 854 (E.D.N.Y.1999) (district court lacked jurisdiction of plaintiff's claim for $25 million damages for wrongful discharge from United States Military Academy Preparatory School, allegedly because of racial discrimination in violation of constitutional and statutory rights, since sum requested "far exceeds the maximum jurisdictional amount of this court under the Tucker Act").

(1986) (upholding as reasonable an even-handed Air Force regulation restricting wearing of headgear against challenge by Orthodox Jew prevented from wearing a yarmulke). And, in determining whether a policy or practice applicable to military personnel violates constitutional rights, "the tests and limitations to be applied may differ because of the military context." *Rostker*, 453 U.S. at 67, 101 S.Ct. 2646. That principle has been applied to exclude women from registration for the draft, *id.*, and to uphold Congressional legislation and the military's policy regarding gays and lesbians in the military. *Able*, 155 F.3d at 631–36. Deference to the military has also been a factor in sustaining First Amendment restrictions. *See, e.g., Greer v. Spock*, 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976) (regulation banning political speeches and restricting distribution of literature on military bases upheld where policy objectively and even-handedly applied).

■ But the government does not suggest, nor could it, that plaintiff could be rejected for service because a military officer or the military hierarchy was biased against Orthodox Jews or thought that the mere fact that plaintiff is an Orthodox Jew would make him unfit for military service, without regard to his individual qualifications. *Cf. Gillette v. United States*, 401 U.S. 437, 450, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971) ("when government activities touch on the religious sphere, they must be secular in purpose, evenhanded in operation, and neutral in primary impact") (upholding exemption from draft for some conscientious objectors). Nor has the government claimed that there is any issue of military necessity which would support exclusion of adherents to a particular religion, under the doctrine of deference to the judgment of military officials.

■ However, plaintiff does not state a claim that he was rejected from NUCPOC for discriminatory reasons. The reasons that were proffered by the Navy—failure to satisfy the requirement of calculus-based physics and the medical conditions of psoriasis and defective vision—are set forth in the applicable rules and regulations. Program Authorization 100A, ¶ III, D, 4.b. (Nov.1994 rev.) (prescribing physics requirement for NUCPOC); Department of Defense Directive 6130.3, pp. 1–16, 1–30 (May 2, 1994) (listing grounds for medical disqualification of applicants for commissions, including psoriasis and "[a]ny refractive error in spherical equivalent of worse than −8.00 or +8.00 diopters"). These qualifications are reasonably related to the requirements of physical fitness of military officers in general and the specific need of having applicants that are qualified by aptitude and educational background for participation in the Navy's nuclear program. These standards are entitled to a high degree of deference, since "courts are ill-suited to second-guess military judgments that bear upon military capability or readiness." *Able*, 155 F.3d at 634.

■ Plaintiff acknowledges that he had psoriasis, a disqualifying condition, and that he had not taken a course in calculus-based physics. In support of his complaints, plaintiff submits a detailed statement of the bases for his claims. In essence, these bases amount to mere speculation that the facially legitimate grounds given by the Navy for rejection of his application are pretextual. For example, that some of the examining physicians expressed to him that would not be disqualified for medical reasons, notwithstanding his failure to satisfy unambiguous written requirements, does not set forth a basis for concluding that the Chief Doctor improperly adhered to those requirements, much less that he did so for discriminatory

reasons. Nor can those statements form the basis for a claim of equitable estoppel, as there is no detrimental reliance or affirmative misconduct. *Id.* at 629 n. 1; *Doe v. Garrett,* 903 F.2d 1455, 1463–64 (11th Cir. 1990), *cert. denied,* 499 U.S. 904, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991). Similarly, plaintiff's assertion that his own optometrist found that plaintiff's refractive error was within acceptable limits at best indicates a difference in examination results that plaintiff should have submitted to appropriate military personnel to question that basis for disqualification, not a ground for judicial intervention in a military decision on individual physical fitness. "The responsibility for determining physical fitness of service persons is that of the armed forces, not of the judiciary." *Maier,* 754 F.2d at 984.

■ In addition, the complaint does not state a claim of bias by any individual involved in the application process with the possible exception of Lieutenant Dash, who is not alleged to have played any role in plaintiff's application after it was resubmitted following the Navy's acknowledgment in December 1996 that plaintiff's application had not been treated fairly by the field personnel who originally rejected it. Even as to Dash, plaintiff's description of his statements and activities does not reasonably support an inference of discriminatory animus. There is no basis for concluding that Dash's advising plaintiff that he could not observe the Sabbath if he were accepted into NUCPOC was discriminatory rather than informative. Dash's mention of his own affiliation with reform Judaism is an innocuous comment that cannot reasonably imply bias. In any event, whatever the cause of Dash's belief that plaintiff was an unsuitable candidate, the complaint gives no basis for the claim that the reasons advanced by other military officials for ultimately rejecting plaintiff's application were a pretext for unlawful discrimination based on religion.

■ Plaintiff also claims that he may have been rejected in part because of his age based on comments by military officers and the age requirement for NUCPOC of less that 26½ years at the time of commissioning set forth in Program Authorization 100A, ¶ III, C. However, the age limit for military commissions does not violate equal protection principles. *Spain v. Ball,* 928 F.2d 61, 63 (2d Cir.1991).

■ Finally, to the extent that the complaints may be read to assert a violation of procedural due process in rejecting the plaintiff's application without affording him a full opportunity to contest the findings, the claim is without merit. *MacFarlane,* 696 F.2d at 221–22 (rejecting due process claim because applicant for military position does not have a property interest in position sought).

### *Conclusion*

The motion to dismiss the complaints is granted. The claims for damages are dismissed for lack of subject matter jurisdiction. The remaining claims are dismissed for failure to state a claim upon which relief may be granted.

**SO ORDERED.**