VULCAN PIONEERS, INC., et al., Plaintiffs,

v.

NEW JERSEY DEPARTMENT OF CIVIL SERVICE, et al., Defendants.

UNITED STATES of America, Plaintiff,

v.

STATE OF NEW JERSEY, et al., Defendants.

UNITED STATES of America, Plaintiff,

v.

STATE OF NEW JERSEY, et al., Defendants.

VULCAN PIONEERS OF NEW JERSEY, et al., Plaintiffs,

v.

CITY OF NEWARK, et al., Defendants.

Civ. Nos. 950–73, 77–2054 and 79–184.

United States District Court, D. New Jersey.

May 24, 1984.

See also D.C., 588 F.Supp. 716.

Vickie Donaldson, East Orange, N.J., for plaintiff Vulcan Pioneers, Inc.

Gerald F. George, U.S. Dept. of Justice, Employment Litigation Section, Washington, D.C., for plaintiff United States.

William H. Eaton, East Orange, N.J., for City of East Orange, N.J.

David I. Fox, Fox & Fox, Newark, N.J., for Newark Firemen's Benevolent Association.

## OPINION

SAROKIN, District Judge.

The court here confronts issues no less difficult than those discussed in the court's recent opinion concerning the layoffs of firefighters. In this case, the legitimate interests of affirmative action and seniority clash in the arena of promotions. Though positions already held are not at issue as in the layoff context, the problem of who shall be promoted nonetheless involves recognized expectations to attain such positions. It therefore implicates the same fundamental concerns as were earlier addressed by the court.

FACTS

East Orange is a signatory to the Consent Decree entered into between the parties to this action and signed by the court on May 30, 1980. That Decree provides, in pertinent part, that

> The defendants are compelled by law and by entering into this Order acknowledging their obligation to and agree they shall, refrain from engaging in any act or practice which has the purpose or effect of unlawfully discriminating against any black or Hispanic employee of, or any black or Hispanic applicant for employment with their respective fire departments because of such individual's race, color, or national origin. Specifically, the defendants shall not discriminate in hiring, assignment, training, discipline, promotion or discharge because of race, color, or national origin.

Consent Decree ¶ 1. The Decree provides, in particular, with respect to promotions to ranks above the level of firefighter that the State of New Jersey "shall review the composition of the current selection process ... to ensure job relatedness and with a goal of eliminating adverse impact on black and Hispanic applicants." Consent Decree ¶ 7(a). Certain testing procedures consistent with Title VII of the Civil Rights Act of 1964 were mandated, id., and reporting procedures imposed. Consent Decree ¶ 7(c). Paragraph 8 further provides that

> Should plaintiff United States, at any stage of the process set forth in paragraph 7 above, or thereafter, determine that the promotional selection process will have the purpose or effect of discrimination against black or Hispanic applicants, plaintiff shall notify the applicable State and municipal defendants, and the affected parties shall meet within a reasonable period to discuss resolution of the matter. If the parties fail to resolve the matter, any affected party may move the Court for resolution.

The parties are before the court pursuant to this paragraph.

In East Orange, an eligibility list for promotion to the rank of Fire Captain was promulgated on October 18, 1979. This list, denominated PM 1476, was to expire on October 17, 1981. However, the lifetime of PM 1476 was extended by one year

when, on March 24, 1981, the Mayor of East Orange announced "a freeze on all departments as to hiring, promotions and expenditures." The Mayor's Executive Order was held by the New Jersey Civil Service Commission to satisfy the requirements of N.J.S.A. 11:22–34.1 which provides for the one-year extension of eligibility lists when a municipality "has adopted an ordinance, resolution, rule or regulation temporarily barring promotions for economic reasons ..." The Commission ruled that an executive order fell within the "ordinance, resolution, rule or regulation" language of the statute and that the promotions and hiring in the East Orange Fire Department were, in fact, frozen notwithstanding certain emergency appointments. In any event, PM 1476 eventually resulted in the appointment of eight new fire captains. All eight were white; the best positioned black on the list was ranked twentieth.

On March 25, 1982 a new Fire Captain eligibility list was promulgated. This list, PM 0661C, includes thirty-five persons, of whom three—numbers 26, 29 and 31—are black. After the Mayor of East Orange announced another freeze, on December 1, 1982, this list was extended and is now set to expire on March 24, 1985. It is this extension to which plaintiff United States now objects. Neither the City of East Orange nor the State of New Jersey have opposed the motion of the United States for supplemental relief in the form of an injunction against the extension of PM 0661C beyond October 18, 1984. The motion is, however, strongly contested by certain white firefighters who have moved to intervene in this matter.

Plaintiff's objection to the extension of PM 0661C is based upon facts to which the City of East Orange has stipulated. Thus, the composition of the East Orange firefighter force is 31.8% black; however, in the ranks above firefighter only one of forty-six officers is black. Stipulation ¶¶ 1, 2. Plaintiff claims that, as opposed to the numbers of blacks that appeared on PM 1476 and PM 0661C, a new list would result in substantial black promotions; thus it states that thirty-three of East Orange's forty-two black firefighters will be eligible to take the examination, now scheduled for May 31, 1984, from which such list will be drawn.[1] If, however, PM 0661C is extended, East Orange estimates that as many as ten additional persons, all white, may be appointed prior to the expiration of the list.[2] Hence, plaintiff claims, an extension of PM 0661C will have "a substantial adverse effect on the eligibility for and likelihood of the promotion of black firefighters to the now virtually all white supervisory ranks of the East Orange Fire Department." Plaintiff's Memorandum at 5.

More controversial is the second prong of plaintiff's argument. Noting that the Mayor's Executive Order of December 1, 1982 did not apply to "those expenditures which are essential for the delivery of services to our citizens," which "emergency expenditures" required clearance by the Mayor's office, plaintiff contends that, in fact, no freeze existed. Promotions, it argues, have not been delayed, nor have there been markedly fewer promotions than in a normal two-year period—there have been six, instead of the two-year average of eight. Therefore, the government concludes, "there would be no inequity to those on the list if the extension were terminated." Plaintiff's Memorandum at 4.

Intervenors dispute this. Claiming a disruption of the legitimate rights of senior employees, they argue that promotions did not occur in average quantities or as per normal promotional procedures because of what was, in fact, a freeze. In particular, they argue that not six, but four promo-

---

**1.** Intervenors dispute this fact, stating that due to layoffs, ten of the thirty-three otherwise eligible black firefighters will not be eligible to take the examination, not having served three years in rank. The government contends that, pursuant to the terms of a settlement agreement entered into between the City and the firefighters on February 9, 1983, this is not the case.

**2.** Intervenors label this estimate "mere speculation," and estimate that only two such openings will occur.

tions occurred from March 25, 1982 to December 31, 1983: the other two were idiosyncratic, one from a prior list and the other due to a death in the line of duty. Citing layoffs, demotions, and the elimination of positions, intervenors contend that promotions during this time period were characterized by long delays. Thus, they conclude, it would be unfair to those listed on PM 0661C if this list were suddenly rendered inoperative; they have been waiting on the list for a long time, and would have been promoted but for the economic hardship faced by East Orange, and the ensuing hiring freeze. Minority firefighters, on the other hand, though forced to wait an additional period of time for the possibility of promotion, would be thus inconvenienced far less than their senior white counterparts.

Defendant East Orange has responded by memorandum and affidavit, arguing that no promotion has been postponed because of the freeze except for one that required the Board of Fire Commissioners to decide upon the proper number of deputy chiefs. East Orange adds that it considered intervenors' alternative version of the facts prior to submitting the stipulation entered into between it and the plaintiff United States. The government has also responded by noting that the delays, layoffs, etc. to which intervenors point as evidence of a freeze occurred prior to October 18, 1982, during the continuing term of PM 1476. Hence, any effect upon firefighters awaiting promotion on PM 0661C was, until that date, due to the extended operation of PM 1476, and not to a freeze. The government contends that since October 18, 1982, no freeze has, in fact, been operative.

ANALYSIS

■ Intervenors' opposition to plaintiff's motion has two bases. First, they argue that "[p]laintiff's objection is not provided for procedurally within the terms of the Consent Decree," because the United States is nowhere given "the authority to object to the extension of an eligibility list." Intervenors' Memorandum at 2–3. This position is completely without merit: the Decree provides for plaintiff to object to the use of a particular list during the development of such list, Consent Decree ¶ 7, "or thereafter." Consent Decree ¶ 8. The Decree undoubtedly contemplates that the government would be able to object where, as here, the process of combatting discrimination depends not merely upon the development of particular lists, but upon which of two alternative lists are used. Therefore, the court finds plaintiff's objection well within its rights under paragraph 8 of the Decree. Nor is intervenors' complaint that plaintiff's objection is unreasonably late a fair one: the evidence demonstrates that plaintiff moved with reasonable, if not immediate, haste to confront this problem, once it came to plaintiff's attention.

Intervenors' second challenge to the government's motion is based upon the facts: they argue that, because there was a promotional freeze in effect, firefighters on PM 0661C have not been promoted as they otherwise would have. Having been placed on an unusually slow-moving line, and having competed for places on that line with minorities,[3] those at the head of the line ought not be told to take a new test just as they reach the doorway of opportunity. Such an argument reflects the policy concerns underlying N.J.S.A. 11:22–34.1.

Plaintiff contends that, in fact, the line was not a particularly slow-moving one and that it is in the nature of such lines that the door will invariably close on some unlucky person who has been standing there for some time. When the timing of the closing of one door and the opening of another is delayed in a manner concededly deleterious to minorities awaiting their turn even to queue up, then the question becomes one of civil rights.

■ As such, it is governed by the letter and spirit of the Consent Decree.

3. Intervenors note that, although three blacks are on the PM 0661C list, seven were eligible to take the test, five took it and two did not achieve scores sufficient for placement on the list.

The facts, as submitted to the court, leave no doubt but that the promotional freeze mandated by East Orange has melted sufficiently to lose its character as "an ordinance, resolution, rule or regulation temporarily barring promotions." Promotions, while below average during an era of economic downturn, were not entirely absent. The list has been utilized; those at its top promoted. It is now time to move to a new list, one with an impact more advantageous to the minorities who are the intended beneficiaries of the Consent Decree.[4] The non-minorities at the top of PM 0661C are not, of course, excluded from taking the new examination, to be given May 31, 1984; indeed, if past performance is any guide, they will do well. However, minorities historically disadvantaged by the operation of discriminatory employment schemes[5] have, as intervenors concede, "been brought into the department following the entry of the Consent Decree." Intervenors' Memorandum at 16. Having now served the requisite period of time, they should also have the opportunity to serve in loftier positions, based on valid, job-related testing.

Merely providing minorities with employment in the public sector does not satisfy the goals of the Constitution in general or the Consent Decree in particular. They must also have the opportunity to advance within their chosen career paths and, as the court has observed elsewhere, to retain their jobs in the face of layoffs that threaten to eradicate their gains. Local orders or state statutes cannot be allowed to stand in the way of these goals.

The interests of nonminorities in not taking another test do not sufficiently countervail these ends. However, the court is not unmindful of either the rights or the expectations of those who might otherwise receive promotions in the near future, but for this ruling. However, as contrasted with the situation involving layoffs, the effect of this decision will not be the taking of property without compensation.[6] The court

---

**4.** Of course, this engenders the supervention of N.J.S.A. 11:22–34.1. However, it is axiomatic that state laws must fall when they hinder the effectuation of affirmative action decrees, even consent decrees. *See, e.g., Stotts v. Memphis Fire Department,* 679 F.2d 541, 566 (6th Cir. 1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1331 (1983), citing *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 15, 91 S.Ct. 1267, 1275, 28 L.Ed.2d 554 (1971); *Brown v. Neeb,* 644 F.2d 551, 563 (6th Cir.1981); *Sarabia v. Toledo Police Patrolman's Association,* 601 F.2d 914, 918 (6th Cir.1981).

**5.** The court is aware that no such finding of historical discrimination has been made. However, where a consent decree exists, "it would frustrate the purposes of Title VII to treat the absence of evidence about ... discrimination in transfer and promotion policies, and [defendant's] denial of liability for such discrimination, as insuperable obstacles to the ordering of affirmative action in transfers and promotion." *E.E.O.C. v. American Telephone and Telegraph Co.,* 4198 F.Supp. 1022–1038–40 (E.D.Pa.1976), *aff'd,* 556 F.2d 167 (3d Cir.1977), *cert. denied,* 438 U.S. 915, 98 S.Ct. 3145, 57 L.Ed.2d 1161 (1978). *See also Stotts, supra,* 679 F.2d at 560, citing *Culbreath v. Dukakis,* 630 F.2d 15, 23 (1st Cir.1980).

**6.** Contravening seniority rights provided by statute and thereby depriving a firefighter of his job, based upon government-initiated litigation to enforce a federal right, constituted such intrusive government action, so interfered with expectations backed by the investment of time, and had such a devastating impact upon the individuals involved, that the court, applying the standards promulgated by the Supreme Court, found that a "taking" had occurred. *See Vulcan Pioneers, Inc. v. New Jersey Department of Civil Service,* 588 F.Supp. 716, 726–727, Civil Action No. 950–73, slip op. at 23–24 (D.N.J. May 3, 1984), citing, *e.g., Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 432, 102 S.Ct. 3164, 3174, 73 L.Ed.2d 868 (1982). Here no such "fundamental element of a property right" is involved. The government's action in substituting one examination for another is routine and ministerial. The impact of such action is slight: no economic benefit already attained is lost, and while certain firefighters may be disappointed, their expectations were never assured of fulfillment in this era of economic recession. Moreover, as the court notes, one is not by this decision irrevocably deprived of a promotion, but merely required to take another examination if promotion is desired.

In thus differentiating between vested benefits on the one hand and expected benefits on the other, the court here applies a settled distinction, both with respect to the takings clause, *see, e.g., Mack v. United States,* 635 F.2d 828, 832, 225 Ct.Cl. 187 (1980), *cert. denied,* 451 U.S. 913, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981); *Portland General Electric Co. v. Federal Power Commis-*

here merely opens up the competition for specific positions. It does not foreclose any particular person from attaining such position, nor deprive any person of a vested economic benefit or an existing position. Here, the rights and opportunities of minority firefighters are advanced, but not necessarily at the expense of particular nonminority firefighters who may yet succeed in obtaining the desired promotions. That they must take another test before doing so, and thereby risk the loss of some advantage now held, is a small price to pay for the protection and advancement of the rights of persons so long the victims of discrimination.

Plaintiff's motion is granted. An appropriate order will issue.

### ORDER

Plaintiff, United States of America, having filed its motion for supplemental relief regarding the Fire Captain eligibility list for the City of East Orange, and counsel for all parties having been heard and the State Defendant and Defendant City of East Orange not opposing the motion,

IT IS on this 24 day of May, 1984, hereby

ORDERED that plaintiff's motion is granted; and it is

FURTHER ORDERED that the current Fire Captain eligibility list (PM 0661C) for the City of East Orange shall be terminated on October 18, 1984 and no appointments to the rank of Fire Captain shall be made from that eligibility list after that date.

*sion,* 328 F.2d 165, 173 (9th Cir.1964), and with respect to the definition of a property interest for purposes of the due process clause. *See, e.g., Robb v. City of Philadelphia,* 733 F.2d 286, at 292 – 93 (3d Cir.1984) (property interest in continued employment, but not promotion); *Estes v. Tuscaloosa County, Alabama,* 696 F.2d 898, 901 (11th Cir.1983) (no property interest in a salary increase); *MacFarlane v. Grasso,* 696 F.2d 217, 221–22 (2d Cir.1982) (no property interest in appointment to a particular job); *Beitzell v. Jeffrey,* 643 F.2d 870, 876 (1st Cir.1981) (no property interest in promotion to a tenured position); *Gaballah v. Johnson,* 629 F.2d 1191, 1202 (7th Cir.1980) (no property interest in promotion). *See generally Perry v. Sindermann,* 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972) (mere subjective expectancy is not protected by procedural due process); *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (property interest requires more than an abstract need or a unilateral expectation of a benefit). Analysis under these two clauses is, as the court has noted, identical. *See, e.g., Frazier v. Lowndes County, Mississippi Board of Education,* 710 F.2d 1097, 1100–01 (5th Cir.1983); *Chevron Chemical Co. v. Castle,* 641 F.2d 104, 114–15 (3d Cir.1981).