**MASSACHUSETTS ASSOCIATION OF AFRO–AMERICAN POLICE, INC., et al., Plaintiffs,**

v.

**The BOSTON POLICE DEPARTMENT, et al., Defendants.**

Civ. A. No. 78–529–Mc.

United States District Court, D. Massachusetts.

May 28, 1985.

Francis H. Fox, John F. Adkins, Bingham, Dana & Gould, Barbara Arnwine, Lawyers Committee for Civil Rights Under Law, Michael Doherty, Boston, Mass., for plaintiffs.

Nicholas Foundas, Boston Police Dept., and Frank McGee, McGee & Phillips, Marshfield, Mass., for defendants.

Michael Sloman, Asst. Atty. Gen., for State defendants.

Gerard S. McAuliffe, McParland & McAuliffe, Quincy, Mass., Regina L. Quinlan, Boston, Mass., for intervenors.

## MEMORANDUM AND ORDER

McNAUGHT, District Judge.

The applicants for intervention have filed a motion, Document 55, pursuant to Fed.R. Civ.P. 24(a) for leave to intervene as defendants in this action in order to move that the consent decree between the existing parties approved by this Court on September 16, 1980 be vacated and that the applicants for intervention be made whole by an order that they be promoted to the permanent position of sergeant in the Boston Police Department. Both the plaintiffs, the Massachusetts Association of Afro-American Police, Inc., et al., and the defendants, the Boston Police Department, et al., have opposed the motion to intervene and have filed a motion, Document 68, to continue the consent decree for five years until September 16, 1990 and to permit the parties to modify the goals, timetables, factual background and statistics in the decree in order to reflect the demographic changes in the Boston Police Department during the past five years. The Boston Police Patrol-

men's Association and the Boston Police Detectives Benevolent Society have also filed motions, Document 75 and Document 80 respectively, pursuant to Fed.R.Civ.P. 24(a), for leave to intervene for the purpose of objection to the extension of the existing consent decree. Finally, both the parties oppose the motions of the Boston Police Patrolmen's Association and the Boston Police Detectives Benevolent Society to intervene.

On March 2, 1978, the plaintiffs, the Massachusetts Association of Afro-American Police, Inc. ("MAAAP"), filed the complaint in this action alleging that the defendants, the Boston Police Department ("Department") et al., were engaged in employment discrimination based on race and color in violation of, *inter alia*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* After more than two years of extensive negotiations, the parties reached agreement on a proposed consent decree. Notice of the proposed decree was provided to the plaintiffs, as well as to four white Boston Police Department officers who had moved to intervene to protect their interest in being promoted to the position of sergeant. Three of those officers are also presently applicants for intervention. On July 9, 1980, this Court denied their first motion to intervene; the denial was not appealed. On that same date, the parties entered into the consent decree at issue here, which was approved by this Court on September 16, 1980.

The consent decree provided for the establishment of validated promotional procedures, the implementation of the Department's pre-existing affirmative action plan and the establishment of goals and timetables for the promotion of blacks to the position of sergeant. Furthermore, the consent decree provided that the Department would promote no more than twenty-five officers from the then-existing eligible list as established in March of 1979 to permanent positions of sergeant. As to promotional tests, the decree stated that the Department should not use tests for the purpose of selecting police officers for promotion unless such tests are validated in accordance with the "Uniform Guidelines on Employee Selection Procedures," 29 C.F.R. § 1607.1 *et seq.*, or otherwise shown to have no discriminatory impact. In addition, the decree required the Department to provide all eligible applicants opportunity for training before promotional tests, to ensure minority applicants equal access to such training, and to post notice of forthcoming promotional exams at least sixty days in advance. Consent Decree at 4–6. Finally, the consent decree was to terminate after five years from its entry unless any party moved for its continuation on the ground that its objectives had not been fully achieved. Consent Decree at 7.

As a result of the recent Supreme Court decision of *Firefighters Local Union No. 1784 v. Stotts,* — U.S. ——, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984), the applicants for intervention ("applicants") moved to intervene on July 25, 1984 in order to vacate the consent decree. It is their contention that *Stotts* "held that the remedial authority of the trial court under Title VII is limited to actual victims of defendants (sic) unlawful discrimination, *Id.* [104 S.Ct.] at 2588," and that therefore "the Court lacked subject matter jurisdiction under that Title to adopt the Consent Decree absent a finding that any of the plaintiffs had been a victim of defendants (sic) discrimination." (Applicant's Memorandum in Support of Motion to Intervene at 8). Such a reading of *Stotts* is far too broad. The issue in *Stotts* was much narrower: whether a court may enjoin a city from following its seniority system in determining who must be laid off as a result of a budgetary shortfall where a consent decree between the city and the firefighters addressed only hiring and promotional practices. The Supreme Court concluded that such an injunction could not be justified, either as an effort to enforce the consent decree or as a valid modification. *Stotts,* — U.S. at ——, 104 S.Ct. at 2586. In so holding, the Court reaffirmed its ruling in *Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), that a court can award competitive seniority only when the benefi-

ciary of the award has actually been a victim of illegal discrimination. *Id.,* ── U.S. at ──, 104 S.Ct. at 2589. The holding of *Stotts* cannot be extended beyond its rather narrow fact pattern.

As Judge Mazzone noted in the recent decision of *Deveraux v. Geary,* 596 F.Supp. 1481 (D.Mass.1984), in analyzing the impact of *Stotts* on Title VII law:

Had the Court meant to rewrite Title VII law to mean that all affirmative action programs are improper absent a finding of actual past discrimination, it would have said so here. *See Culbreath,* 630 F.2d at 23, *citing United States Steelworkers v. Weber,* 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979); *University of California v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978); *United States v. City of Miami,* 614 F.2d 1322 (5th Cir.1980); *Boston Chapter NAACP, Inc. v. Beecher,* 504 F.2d 1017 (1st Cir. 1974), *cert. denied,* 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775 (1975); *Associated General Contractors of Massachusetts, Inc. v. Altshuler,* 490 F.2d 9 (1st Cir. 1973), *cert. denied,* 416 U.S. 957, 94 S.Ct. 1971, 40 L.Ed.2d 307 (1974). The clear implication of the above language (that "it is reasonable to believe that the 'remedy', which it was the purpose of the decree to provide, would not exceed the bounds of the remedies that are appropriate under Title VII, at least absent some express provision to that effect," *Stotts,* [──] U.S. [──], 104 S.Ct. at 2586) is that the actual remedy that was provided by the decree was valid and did not exceed the bounds of Title VII, although the subsequent displacement of white employees was invalid.

*Devereaux v. Geary,* 596 F.Supp. at 1486. That cogent analysis of *Stotts* rightly limits its application to the set of facts ad-dressed therein.[1] In the present case, since there is no issue of any layoffs made in violation of a bona fide seniority system, *Stotts* is inapplicable.

■ Although there are no layoffs in the case at bar, the applicants for intervention attempt to fit into the *Stotts'* fact pattern by characterizing themselves as having a strong interest in seniority rights and upward job mobility. They, like all other police officers, hope to be promoted. But hopes are often elusive and the hope of being promoted is merely that; it is not a seniority right. The consent decree at issue here was designed to remove all vestiges of discrimination from the process of promoting police officers; as such it does not affect the seniority rights of officers who hope to be promoted in the future.

As there is therefore no basis for intervention, it is unnecessary to discuss whether the motion for intervention would meet the test for timeliness as articulated in *Stallworth v. Monsanto,* 558 F.2d 257 (5th Cir.1977) and adopted by the First Circuit in *Culbreath v. Dukakis,* 630 F.2d 15 (1st Cir.1980). Accordingly, the motion of the applicants for intervention for leave to intervene as defendants in this action is denied.

■ Finally, both the plaintiffs and the defendants have filed a motion pursuant to ¶ 13 of the consent decree that the Court modify and continue the decree. As grounds therefor, both parties state that ¶ 13 of the consent decree entered in this case on September 16, 1980 provides in pertinent part that:

The Decree shall terminate after 5 years from its entry unless any party has moved for its continuation on ground

---

1. *See also Vanguards of Cleveland v. City of Cleveland,* 753 F.2d 479 (6th Cir.1985) (*Stotts* has no effect on voluntary affirmative action plans embodied in consent decrees.); *Equal Employment Opportunity Commission v. Local 28,* 753 F.2d 1172 (2nd Cir.1985) (distinguishing case from *Stotts* based on fact that *Stotts'* discussion of § 706(g) related only to "make whole" relief and not to prospective relief such as in the affirmative action plan at issue there); *Aken v. Young,* 750 F.2d 43 (6th Cir.1984) and *Wygant v. Jackson Board of Education,* 746 F.2d 1152 (6th Cir.1984) (*Stotts* did not overrule *Weber's* refusal to condemn voluntary, race-conscious affirmative action plans.); *Britton v. South Bend Community Corp.,* 593 F.Supp. 1223, 1230–31, n. 4 (N.D.Ind.1984) (*Stotts* is inapplicable to voluntary affirmative action programs.)

that the objectives of the Decree have not been fully achieved. The Court will thereupon determine whether or not the Decree will be dissolved.

It is premature, four months before the consent decree is currently scheduled to be terminated, for the Court to determine whether or not the objectives of the decree have been fully achieved. The Court there-fore declines at the present time to grant or ·deny the motion of the parties. At a later, more appropriate time, the motions may be renewed.