UNITED STATES of America, Plaintiff,

v.

STATE OF NEW JERSEY, et
al., Defendants,

and

Robert M. Sheridan, et al., Intervenors.

Civ. A. Nos. 950–73, 77–2054
and 79–184.

United States District Court,
D. New Jersey.

July 26, 1985.

Gerald F. George, U.S. Dept. of Justice, Civil Rights Div., Washington, D.C., for plaintiff.

Mark Fleming, Deputy Atty. Gen., Trenton, N.J., for State of N.J.

Thomas Calligy, Hoboken, N.J., for Hoboken.

Schneider, Cohen & Solomon by David Grossman, Jersey City, N.J., for intervenors Sheridan, et al.

OPINION

SAROKIN, District Judge.

The court is, once again, confronted with the claim of persons who have taken and passed a civil service examination for firefighter and now stand on the brink of appointment. The court reiterates its recognition of the frustration and the sense of unfairness experienced by persons who

may be denied an opportunity because of the need to protect the rights of minorities.

However, the need for affirmative action has not diminished, nor does this court perceive any change in the applicable law which would authorize it to retreat from the conditions of the consent decree entered in this matter and the principles which underly it.

This court stated in an earlier opinion: This case and others involving the same issues represent a turning point in our society. We cannot either through legislation or court edict, drive bias and prejudice from the hearts and minds of the people. We can, however, condemn such bias and prejudice and prohibit them from denying constitutional rights and equality to any of our citizens. Affirmative action plans, with all of their imperfections, deficiencies and weaknesses, are a symbol of this country's willingness to correct the inequities of the past and to express a commitment to their elimination in the future.

*Vulcan Pioneers, Inc. v. New Jersey Department of Civil Service,* 588 F.Supp. 716, 727 (D.N.J.1984). The foregoing continues to be the view of this court.

In this particular case, those affected will be required to take the test again and, therefore, they will have the same opportunity to be appointed as they now have. Minorities, on the other hand, will now be afforded an equal opportunity denied to them in the past. Any interim steps which deny or minimize that opportunity should be and must be rejected by the court in the absence of a clear emergency warranting such action.

Twenty-one candidates for the position of firefighter in Hoboken, New Jersey here move to intervene and for preliminary injunctive relief against the expiration of an eligibility list for such position on June 8, 1985. Plaintiff United States opposes the latter application, and has heretofore refused permission either to hire intervenors,

or to extend the life of the eligibility list upon which intervenors are numbers twenty through forty. Intervenors [1] contend that plaintiff's position violates Title VII of the Civil Rights Act of 1964, as well as their constitutional rights, and that it will have serious adverse consequences for the City of Hoboken. For the reasons set forth below, intervenors' application for relief is denied.

By Consent Decree entered into on May 30, 1980, plaintiff United States of America and defendants, including Hoboken, agreed that defendants would

... refrain from engaging in any act or practice which has the purpose or effect of unlawfully discriminating against any black or Hispanic employee of, or any black or Hispanic applicant or potential applicant for employment with their respective fire departments because of such individual's race, color, or national origin. Specifically, the defendants shall not discriminate against any individual in hiring, assignment, training, discipline, promotion or discharge because of race, color, or national origin.

Consent Decree ¶ 1. To this end, the defendant municipalities were barred from making appointments to the rank of firefighter from certain 1978 and 1979 examination lists, except where in accord with affirmative action goals, or where necessitated by emergency. ¶ 2. For Hoboken, "the goal shall be to fill at least forty (40) percent of all vacancies with qualified minority applicants." ¶ 3(b). The defendant State of New Jersey was to establish new firefighter eligibility lists based upon state statutes and regulations "or such other less restrictive and nondiscriminatory standards as may subsequently be adopted." ¶ 4(a). A written examination could be "used solely on a qualifying basis" with job-related physical performance or other selection devices utilized for selection. ¶ 4(b). "The cut-off score on the written examination, the weights assigned to rank-

---

**1.** There is no opposition to the application to intervene and it is accordingly granted, pursu-

ant to Federal Rule of Civil Procedure 24(a).

ing devices and the duration of eligibility lists" were to be "set at a point consistent with assuring qualified candidates and with facilitating compliance with the [affirmative action] goals ...." *Ibid.* In the meantime, New Jersey was to perform a new validity study, the results of which were to be utilized in developing a new examination, to be approved by plaintiff. ¶ 4.

Additionally, the defendant cities were to step up recruitment and training of minority candidates, with the help of the state. ¶ 5(a). All defendants were to provide racial breakdowns of test applicants, ¶ 5(b)(1), scores, ¶ 5(b)(2), and the resulting eligibility lists. ¶ 5(b)(3). Paragraph six of the Consent Decree then provides:

Should plaintiff United States, at any stage of the selection process set forth in paragraphs 4 and 5 above, or thereafter, determine that a city will be unable to meet its interim hiring goals based upon that selection process, the plaintiff shall expeditiously notify the affected defendants, and the affected parties including the State shall meet within a reasonable period to discuss alternative methods by which the affected fire departments could meet its goal. If the parties fail to resolve the matter, any affected party may move the Court for resolution. If an objection is made by plaintiff, no persons shall be certified for appointment pending resolution by the court.

¶ 6.

Intervenors herein took an October, 1982 examination for the position of firefighter. Such examination caused concern on the part of the plaintiff United States. Indeed, in a January 21, 1983 letter, counsel for the United States noted that such examination, which was administered in Hoboken, Trenton, New Brunswick, Jersey City and Camden, "eliminates minorities at a rate at least twice that of whites. As a result, the percentage of minorities eligible for the next step in the selection process is quite low, and well below the goals for these

cities in the consent decree and well below the applicant flow." Aff. of Gerald F. George, Exh. 10 (letter dated 1/21/83).[2] Though plaintiff thus found the evidence "not adequate to support use of the examination," it did not insist on administration of a new test. Counsel wrote:

The new eligibility lists will be in effect for only one year, and there may well be little or no hiring by these cities in that time period. While the composition of the lists as a whole will certainly be inadequate in terms of the obligations of the consent decree, the composition of the first few positions, which will be determined by veteran preference and physical agility test score, may be sufficient for the amount of hiring actually contemplated. Accordingly, administering a new examination at this point might be an expensive and impractical exercise.

*Ibid.* No appointments were made during the first year of the list; accordingly, on August 19, 1983, plaintiff indicated that it "would certainly consider extension of the list for a second year," particularly since there were "six minorities among the first fifteen names on the list." George Aff., Exh. 10. On December 30, 1983, plaintiff, in fact, agreed to such extension "if no more than ten appointments were to be made." *Id.* Notwithstanding this caveat, plaintiff approved nineteen appointments in late 1984; seven of the nineteen appointees were black or Hispanic. George Aff. ¶ 9.

On January 28, 1984, the Director of Public Safety of Hoboken, James W. Giordano, requested that the eligibility list, denominated M0018D, be extended an additional year, to June 8, 1986. Director Giordano stated that "[t]he first 20 eligible candidates have contacted me and they informed me that they are interested in this position as Hoboken firefighters now and in the near future." George Aff., Exh. 8. Plaintiff responded that, while it had approved a one-year extension to June 8, 1985, a further extension ought to "wait

---

**2.** In particular, 71% of the white applicants, but only 35% of the blacks and 41.5% of the Hispan- ic applicants passed the 1982 Hoboken firefighter examination.

until early 1985." George Aff., Exh. 9. However, despite pleas from the City Administrator, George Aff., Exh. 2, the Director of Public Safety, *id.*, Exh. 3, and the Fire Chief, *id.*, Exh. 4, plaintiff rejected such request, by letter dated May 31, 1985. Counsel wrote:

We have received the letters of Mr. Chius, Director Giordano and Chief Houn concerning the City's request for the appointment of additional firefighters.

The letters primarily set out the concern of City officials that sufficient personnel be appointed and trained before February 1, 1986, to assure an experienced firefighting force when several persons retire on that date. While we are not unsympathetic to the concern, we question the need to hire prior to June, 1985, twenty persons for whom vacancies will not exist until February 1986, where that hiring appears inconsistent with the City's obligations under the Consent Decree. In particular, we question that need when the City left unfilled for several months in 1984–85 at least eleven vacancies at a time when it was free to use the list. We also note that the City expressly stated in its April 3, 1985, quarterly report that it had no intention of filling any firefighter vacancies within the ensuing sixty (60) days.

We have expressed from the outset concern over the validity of the examination used by the State for this eligibility list, and we made the City aware quite sometime ago of our position that approval of the use this eligibility list [sic] was contingent upon its not being used for an unusually large number of appointments. Although in our letter of December 30, 1983 approving an extension of the list we indicated a limit of ten (10) appointments, we in fact agreed to permit twenty appointments last fall. However, we also informed the City that we would not accede to any additional extension of this list . . . .

As you know, the State tests for firefighters on a regular basis. Given our expressed reservation over the use of this list, if the City anticipated a large number of additional vacancies, it should have made certain it was included in the firefighter examination announced by the State last fall, so that a new eligibility list would be available this summer.

Under the foregoing circumstances, we cannot accede to the City's request that an additional twenty appointments be permitted from the current eligibility list. We will be happy, of course, to work with the City and the State to accelerate, if possible, the administration of the upcoming firefighter examination.

George Aff., Exh. 10.

■ Intervenors now move for an injunction to prevent the expiration of the June 8, 1985 eligibility list, and to prevent efforts by the government to bar Hoboken from hiring such intervenors. Additionally, intervenors' prayer for relief asks that the court "[e]njoin and restrain the plaintiff and Defendant from enforcing the Consent Decree entered on or about May 30, 1980." Complaint, Prayer for Relief ¶ 1(e). In support of such application, intervenors point to both the need for additional firefighters in Hoboken, *see* Aff. of James Houn (6/6/85) ¶¶ 2–5; Aff. of Alfred N. Arrezzo (6/6/85) ¶ 4, and the harm to themselves should the relief sought not be granted. Aff. of Roary M. Miller (6/20/85) ¶¶ 3–8; Aff. of William J. Lemonie (6/20/85) ¶¶ 8–10; Aff. of Christopher L. Lyons (6/20/85) ¶¶ 3–7; Aff. of Robert Falco (6/6/85) ¶¶ 4–6, 9.

The court is extremely sympathetic to the plight of intervenors. Indeed, it is apparent that many of them have made changes in their lives based upon their having been informed by the City of Hoboken that they would be hired as firefighters by the City. However, the Consent Decree voluntarily entered into by Hoboken allows plaintiff to object to the utilization of eligibility lists which have an adverse impact upon minority candidates, or which disenable a municipality from reaching the goals set forth in paragraph 3 of the Decree. Plaintiff has so objected here, and it is for

the court to determine whether such objection is in accord with the Decree.

The court finds that it is. As plaintiff United States points out, the court has decided an issue almost identical to this one approximately one year ago. Then, the court enjoined the extension, under state law, of an East Orange promotional list, in light of the fact that another list, not then in effect, was likely to have less of an adverse impact upon minority candidates. The court wrote that "[t]he list has been utilized; those at its top promoted. It is now time to move to a new list, one with an impact more advantageous to the minorities who are the intended beneficiaries of the Consent Decree." *Vulcan Pioneers, Inc. v. New Jersey Department of Civil Service,* 588 F.Supp. 727, 731 (D.N.J.1984), *reconsideration denied,* unpub. op. (D.N.J. July 10, 1984), *stay denied,* unpub. op. (D.N.J. Oct. 29, 1984), *aff'd mem.,* (3d Cir. May 3, 1985). The court held that, while it was "not unmindful of either the rights or expectations of those who might otherwise receive promotions in the near future, but for this ruling," 588 F.Supp. at 731, such rights did not rise to the level of property for purposes of analysis under the takings clause or a property interest for purposes of the due process clause. *Id.* at 731–32 n. 6. It wrote:

> The court here merely opens up the competition for specific positions. It does not foreclose any particular person from attaining such position, nor deprive any person of a vested economic benefit or an existing position. Here, the rights and opportunities of minority firefighters are advanced, but not necessarily at the expense of particular nonminority firefighters who may yet succeed in obtaining the desired promotions. That they must take another test before doing so, and thereby risk the loss of some advantage now held, is a small price to pay for the protection and advancement of the rights of persons so long the victims of discrimination.

588 F.Supp. at 732.

This case proceeds *a fortiori* from the East Orange matter. As in East Orange, the Hoboken list here at issue has been utilized, and those at its top promoted. Moreover, as in East Orange, a new test is likely to yield more minority candidates; in East Orange, this was because there were to be a greater number of minority candidates taking the test, 588 F.Supp. at 729, while in Hoboken, it will be because the new test will, presumably, not have the adverse impact on minorities which plagued the test that yielded eligibility list M0018D. And, as in East Orange, those candidates now on the Hoboken list set for expiration are not being deprived of rights already gained, but rather, are merely being asked to take another test should they continue to be interested in becoming firefighters.

Indeed, if anything, the situation in Hoboken makes the relief here requested less appropriate than it was in East Orange. Here, no state statute is at issue, as was the case in East Orange, where the extension of the pertinent eligibility list was arguably mandated by state law. 588 F.Supp. at 731 and n. 4. Moreover, in East Orange, the court was required to resolve the factual question of whether a promotional freeze had, in fact, been in effect. No such factual issue is presented in Hoboken, where numerous appointments—indeed, more than contemplated by plaintiff—have been made from the pertinent list, and no specific harm to intervenors is cited, other than that engendered by the failure to appoint. Finally, in East Orange, the court noted the importance of promotions to the affirmative action plan in effect.

> Merely providing minorities with employment in the public sector does not satisfy the goals of the Constitution in general or the Consent Decree in particular. They must also have the opportunity to advance within their chosen career paths and, as the court has observed elsewhere, to retain their jobs in the face of layoffs that threaten to eradicate their gains.

588 F.Supp. at 731. Much more important is the initial hiring process, here at issue in

Hoboken. It is the crucial first step, without which promotional issues are obviously rendered academic. Such process also redresses a problem explicitly recognized by defendants, like Hoboken, in the Consent Decree. Though no such admission exists with respect to promotions, the Consent Decree states:

> The defendants recognize that the proportion of black and Hispanic firefighting personnel on the respective municipal fire departments of the defendant cities is below the representation of blacks and Hispanics in the labor force of said municipalities, and they also recognize the need to undertake affirmative action to increase substantially the proportion of black and Hispanic personnel on their respective fire departments.

¶ 3. Based upon this recognition, annual interim hiring goals were set forth, such as did not exist for promotions. The reason is clear: hiring policy is a far more fundamental aspect of an affirmative action plan than is promotional policy. The Consent Decree, as well as the statutory and constitutional rights which underlie it, thus require the court to scrutinize adverse impact in hiring even more closely than in promotions. The relief sought by the Hoboken intervenors poses a greater threat to the Decree than that sought by the East Orange intervenors. The court must be particularly careful to stave off that threat.

For this reason, the court must reject intervenors' application for relief at this time. Intervenors may, at some future point, be able to prove that the test given was valid notwithstanding its adverse impact upon minorities, and that the basis for the government's action, *i.e.,* that the October, 1982 examination was of doubtful validity, is not supported. Here, however, they have not even alleged that such is the case; rather, they leave plaintiff's allegations of invalidity unrefuted. As such, they have failed to bear their burden of showing the likelihood of success on the merits necessary to sustain the type of preliminary relief requested. *See, e.g., SI Handling Systems, Inc. v. Heisley,* 753 F.2d 1244, 1254 (3d Cir.1985), citing *Klitzman, Klitzman and Gallagher v. Krut,* 744 F.2d 955, 958–59 (3d Cir.1984); *Continental Group v. Amoco Chemicals Corp.,* 614 F.2d 351, 356–57 (3d Cir.1980).

Nor does the fact that Hoboken needs additional firefighters justify the relief sought. Indeed, while the reasons cited by the Fire Chief and Construction Code Official/Zoning Officer of Hoboken as to why additional firefighting personnel would be desirable for the city, it notes that as in East Orange, the city does not, apparently, join in intervenors' application for relief. *See Vulcan Pioneers, Inc. v. New Jersey Department of Civil Service,* Civil Action No. 950–73, unpub. op. at 11 (D.N.J. Oct. 29, 1984). That the city also failed to inform plaintiff United States that it required, and intended, to hire additional firefighters and, in fact, informed plaintiff as late as April 3, 1985, that it "[did] not anticipate any appointments within the next 60 day period (April and May, 1985)," *see* George Aff., Exh. 1(a), casts further doubt on the city's need for the relief here sought by intervenors and grounded, in large part, upon a public interest which the city ought to take responsibility for vindicating. That such interest does not exist is, finally, reinforced by the fact that the city also failed to request inclusion in the firefighter examination announced by the defendant State of New Jersey in the fall of 1984. Had it done so, and been candid with intervenors and others in their position regarding plaintiff's serious reservations concerning list M0018D, then the city would now be in a position to fill its purported needs and intervenors, possibly, would be in the position to be hired from a new list, based on a more valid examination.[3] That such is not the case is purely

---

3. On the other hand, the fact that no test has yet been administered lessens the harm to intervenors of having to take another test. It is not true, as at least two of intervenors imply, that they thus missed taking a civil service examination that would otherwise have made them eligible for a firefighter position at this point. *See* Lyons Aff. ¶ 4; Miller Aff. ¶¶ 4, 6. Of course, in

the fault of the City of Hoboken, particularly in that the needs cited by its Fire Chief and Construction Code Official/Zoning Officer are needs which could and should have been identified by the city long ago, or at least as early as the fall of 1984. The increase in residential units, development of the waterfront and demographic changes discussed are trends of which the city must have been aware for some time: that they did not heretofore identify an increased need for firefighting personnel, and act on such need, leaves the court unable to find the emergency situation now invoked by intervenors in support of their application for court-ordered employment.[4]

The court thus finds the public interest cited by intervenors to be belied by the city's actions. Moreover, to the extent that intervenors have relied on the city's representations that they would be hired, notwithstanding the city's knowledge that the approval of such appointments by plaintiff was far from assured, intervenors have a legitimate grievance with the city. Such grievance may not, however, undermine the operation of the Consent Decree, and the civil rights goal upon which it is based.

■ Nor does the court find intervenors' facial attack on the Decree to justify the relief sought here. First, as plaintiff notes, intervenors' application suffers for its late date: applications for equitable relief should, indeed must, be made at the earliest possible moment. *See, e.g., Abbott Laboratories v. Gardner*, 387 U.S. 136, 155, 87 S.Ct. 1507, 1519, 18 L.Ed.2d 681 (1967). That intervenors waited until relief was absolutely necessary to prevent the harm they feared, while attacking the Consent Decree on grounds present much earlier is inexcusable and may alone constitute laches, sufficient to defeat intervenors' application. More important, while the court does not here address the applicability of the Supreme Court's decision in *Firefighters Local Union No. 1784 v. Stotts*, —— U.S. ——, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984), to the entire range of issues arising under the Consent Decree, it has already made clear its belief that the issue raised here is not governed by *Stotts*. As the court wrote with respect to East Orange:

> ... *Stotts* concerned the effect of §§ 703(h) and 706(g) of Title VII of the Civil Rights Act of 1964. The Supreme Court held that they limit "the authority of the trial court to disregard a seniority system in fashioning a remedy" under Title VII; only identifiable victims of discrimination can obtain relief in contravention of such a system. [104 S.Ct. at 2588–90]. Seniority is not here implicated and Title VII's strictures against its disruption do not therefore apply.

*Vulcan Pioneers, Inc. v. New Jersey Department of Civil Service*, Civil Action No. 950–73, unpub. op at 4 n. 1 (D.N.J. July 10, 1984). Since the court's holding to this effect, every Court of Appeals to have considered the scope of *Stotts*, including that of the Third Circuit, has agreed that it is to be limited to the problems presented by *a court order* creating a conflict between *a bona fide seniority system* and an affirmative action plan. *See Commonwealth of Pennsylvania v. Local Union 542, International Union of Operating Engineers*, 770 F.2d 1068, slip op. at 8–9, 12 (3d Cir.1985); *Deveraux v. Geary*, 765 F.2d 268 (1st Cir.1985); *Turner v. Orr*, 759 F.2d 817, 824 (11th Cir.1985); *E.E.O.C. v. Local 638 ... Local 28 of Sheet Metal Workers' International Union*, 753 F.2d 1172, 1186 (2d Cir.1985); *Vanguards of Cleveland v. City of Cleveland*, 753 F.2d 479, 486–93 (6th Cir.1985); *Diaz v. American Telephone & Telegraph*, 752 F.2d 1356, 1360 n. 5 (9th

light of the circumstances of this case, the city and state should take whatever action is necessary to include intervenors on the list, to be utilized for upcoming appointments. If they do so, the situation that existed in East Orange, in which intervenors were left with only one week, from the time of the court's Opinion, to study for the examination, will be prevented. *See* 588 F.Supp. at 729.

4. This is particularly so in that the next retirements in Hoboken will apparently become effective on February 6, 1986; those nineteen firefighters retiring effective June 1, 1985 seem to have been replaced already, by the city's late 1984 hires.

Cir.1985); *Van Aken v. Young,* 750 F.2d 43, 45 (6th Cir.1984) ("... here we deal with a remedy applied voluntarily by a public employer at the point of hiring. Thus contrary to the facts of *Stotts,* no employers with vested seniority rights were deprived of them."); *Kromnick v. School District of Philadelphia,* 739 F.2d 894, 911 (3d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985); *Grann v. City of Madison,* 738 F.2d 786, 795 n. 5 (7th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 296, 83 L.Ed.2d 231 (1984). *See also Lujan v. Franklin County Board of Education,* 766 F.2d 917, 925 n. 7, (6th Cir. June 17, 1985) (*Stotts* limited to court-ordered relief, and does not apply to voluntary affirmative action plans); *Wygant v. Jackson Board of Education, Jackson, Mich.,* 746 F.2d 1152, 1159 (6th Cir.1984) (same), *cert. granted,* —— U.S. ——, 105 S.Ct. 2015, 85 L.Ed.2d 298 (1985).[5] The goals here challenged by intervenors were, of course, voluntarily arrived at; the City of Hoboken signed the Consent Decree here at issue, recognizing "that the proportion of black and hispanic firefighting personnel is below the representation of blacks and Hispanics in the labor force ... and ... the need to undertake affirmative action to increase substantially the proportion of black and Hispanic personnel ...." ¶ 3. Moreover, the hiring issues here presented do not implicate the seniority concerns specifically addressed by Title VII, which concerns motivated the Supreme Court in *Stotts.* Hence, the court finds that *Stotts* does not govern the instant dispute, or require the relief sought by intervenors.

■ Finally, the court also disagrees with intervenors that the provisions of the Decree here at issue overstep the bounds of Title VII established by the Supreme Court in *United Steelworkers of America v. Weber,* 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979), to govern voluntary affirmative action plans. There, the Court held that voluntary race-conscious affirmative action plans were not impermissible *per se;* it found the plan there at issue to "[fall] on the permissible side of the line" because it "was designed to break down old patterns of racial segregation and hierarchy;" because it did not "unnecessarily trammel the interests of the white employees;" and because it was "a temporary measure" designed not "to maintain racial balance, but simply to eliminate a manifest racial imbalance." 443 U.S. at 208, 99 S.Ct. at 2730. Since Weber, courts have consistently evaluated voluntary affirmative action plans utilizing these criteria of remedial nature, the interests of nonminority applicants, and temporariness. *See, e.g., Vanguards of Cleveland, supra,* 753 F.2d at 484; *Johnson v. Transportation Agency, Santa Clara County, California,* 748 F.2d 1308, 1311 (9th Cir.1984); *Kromnick, supra,* 739 F.2d at 911–12; *Williams v. City of New Orleans,* 729 F.2d 1554, 1560–61 (5th Cir.1984) (*en banc*); *Kirkland v. New York State Department of Correctional Services,* 711 F.2d 1117, 1132 (2d Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984); *Sisco v. J.S. Alberici Construction Co., Inc.,* 655 F.2d 146, 149 (8th Cir.1981), *cert. denied,* 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688 (1982); *Parker v. Baltimore and Ohio Railroad Co.,* 652 F.2d 1012, 1014 (D.C.Cir.

---

**5.** District courts have construed *Stotts* in a similarly narrow fashion. *See, e.g., United States v. City of Buffalo,* Civ.–73–41C, slip op. (W.D.N.Y. June 5, 1985); *Massachusetts Association of Afro-American Police, Inc. v. Boston Police Dept.,* 106 F.R.D. 80 (D.Mass.1985); *Dougherty v. Barry,* 607 F.Supp. 1271, 1286–87 (D.D.C.1985); *Hammon v. Barry,* 606 F.Supp. 1082, 1094–95 (D.D.C.1985). *See also Morgan v. Nucci,* 612 F.Supp. 1060 (D.Mass.1985) (*Stotts* does not apply where there are findings of discrimination and where the rights of third parties, *i.e.,* students,

are involved); *Britton v. South Bend Community School Corp.,* 593 F.Supp. 1223, 1231 (N.D. Ind.1984) (*Stotts* does not apply to voluntarily undertaken affirmative action plans); *N.A.A.C.P. v. Detroit Police Officers Association (DPOA),* 591 F.Supp. 1194, 1202–03 (E.D.Mich. 1984) (*Stotts* does not apply to cases brought under the fourteenth amendment, rather than Title VII); *Vulcan Pioneers, Inc. v. New Jersey Department of Civil Service,* 588 F.Supp. 732, 734 (D.N.J.1984) (*Stotts* does not prohibit voluntary affirmative action).

1981); *Hammon v. Barry, supra,* 606 F.2d at 1090–94.

Here, however, intervenors attack the Consent Decree based upon but one prong of the *Weber* analysis: that the Decree "does not have an expiration date, and is not a temporary remedy." Intervenors' Reply Brief at 4. Intervenors assert that, as such, the Decree "fails to take account of changes in the racial composition of the community and the available work force." Intervenors' Brief at 7. In so arguing, intervenors completely ignore the final paragraph of the Decree, which states:

> Defendants may move, with plaintiff United States having forty-five (45) days notice and right to oppose any such motion, for termination of this Order as to any particular defendant upon showing that the combined proportion of blacks and Hispanics in the uniformed ranks as a whole of that defendant's fire department approximates their proportion in the relevant labor market for that city.

¶ 12. This paragraph meets the specific requirements of *Weber, see* 443 U.S. at 208–09, 99 S.Ct. at 2730, and its progeny, cited by intervenors. If it is true, as intervenors assert, that the goal applicable to Hoboken, "is not reflective of the present racial composition of the community," Intervenors' Brief at 6, then they, and/or Hoboken, should so move under the Decree. Currently, however, there are no facts before the court which would indicate that such is the case; hence, intervenors have failed to demonstrate any likelihood of success on the merits of the *Weber* claim, so as to justify the relief sought here.

For all of these reasons, intervenors' application for relief must be denied. That intervenors have a legitimate grievance cannot be gainsaid. As always, however, litigation under the instant Consent Decree requires such grievance to be balanced with the greater social good which the Decree seeks to further. Here, that balancing, as conducted under the applicable law, and in light of the particular facts presented, favors the preservation of affirmative action towards the end of eradicating age-old discrimination over the extension of a particular hiring list resulting from an examination which had an adverse impact upon minority candidates.

An appropriate order will issue.